IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID DEAN, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-03406 |
| | § | |
| NEWSCO INTERNATIONAL ENERGY | § | |
| SERVICES, USA, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are Plaintiffs' Notice of Motion for Partial Summary Judgment [ECF No. 58], their Memorandum in Support [ECF No. 58-1], and Defendant's Response [ECF No. 62]. Also before the Court are Defendant's Motion for Summary Judgment and, in the Alternative, Motion for Partial Summary Judgment [ECF No. 48], Plaintiffs' Memorandum in Opposition [ECF No. 56], and Defendant's Supplement to its Motion for Summary Judgment and Supplement to its Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment [ECF No. 66].

Having considered the Motions, the responses, the replies, the summary judgment evidence, the applicable law, and the supplemental briefing from the Parties, the Court decides, for the reasons set forth below, that Plaintiffs' Motion for Partial Summary Judgment [ECF No. 58] be **DENIED** and that Defendant's Motion for Summary Judgment and, in the Alternative, for Partial Summary Judgment [ECF No. 48] be **DENIED**.

### I.     Background Facts

Plaintiffs David Dean ("Dean"), Bennett Joerger ("Joerger"), and Larry Dore ("Dore") are Directional Drillers that worked for Newsco International Energy Services, USA, Inc. (hereinafter

"Newsco" or "Defendant").[1] As such it was their job on various oil well drill sites to perform directional drilling services. Plaintiffs brought this action seeking unpaid overtime under the Fair Labor Standards Act ("FLSA"), claiming they worked 12-hour days for weeks at a time and were not paid overtime wages.

Defendant concedes that Plaintiffs were not paid overtime and, while it differs with Plaintiffs significantly regarding how frequently Plaintiffs worked overtime, it also concedes that there were occasions when Plaintiffs worked in excess of 40-hour weeks. Defendant claims that Plaintiffs were not entitled to overtime because, among other defenses, they are exempt from the FLSA as highly compensated executive and/or administrative employees. More specifically, Defendant claims the following:

> The undisputed evidence establishes that Plaintiffs were exempt employees who, among other things:
> - Made over $100,000 pro rata compensation during each year they worked for Newsco;
> - Did not perform any significant manual labor;
> - Supervised the work of all field personnel on every single job site;
> - Performed primary duties that included performance of office or non-manual work; and
> - Performed primary duties that required them to exercise discretion and independent judgment with respect to matters of great significance both to Newsco, and to its clients.
>
> The undisputed evidence further establishes that, even if Plaintiffs were not exempt employees, their damages, if any, should be calculated using the fluctuating workweek method of calculating damages because:
> - Their hours fluctuated from week to week;
> - They received a fixed salary that did not vary with the number of hours worked during the week;
> - Their fixed salary was sufficient to provide compensation for each week at a regular rate that at least equaled the minimum wage; and
> - They had a "clear and mutual understanding" that Newsco would pay the fixed salary regardless of the number of hours worked.

---

[1] Plaintiffs Dean, Joerger, and Dore will frequently be collectively referred to as "Plaintiffs." Scott Warner, who was also previously a plaintiff, has indicated his unwillingness to proceed with this suit and will be addressed on a separate basis.

[ECF No. 48, p. 2].

Plaintiffs counter:

*First*, Defendant's administrative exemption fails as a matter of law because Defendant cannot prove either one of the "job duties" prongs of the defense. To satisfy the first primary duty prong of the administrative exemption, Defendant must prove that Plaintiffs' directional drilling duties are directly related to running Newsco's business itself or determining its overall policies rather than producing the commodity Newsco provides to the marketplace. Newsco cannot meet its burden of proof, however, because it is in the business of providing directional drilling services, and Plaintiffs are the ones actually performing this service to the marketplace. Plaintiffs are exactly the type of "front-line" employee who is outside the scope of the administrative exemption. Newsco cannot establish the second prong of the administrative exemption defense either because this record establishes that Plaintiffs' primary job duty—while important to Newsco—does not require them to exercise discretion and independent judgment with respect to matters of significance.

*Second*, Defendant's executive exemption defense fails as a matter of law as well. Despite the well-developed factual record establishing that directional drilling is Plaintiffs' primary job duty, Defendant remarkably contends that Plaintiffs were high-level managers and that their primary job duty is management. This argument is unsupported by the facts. Defendant incorrectly attributes managerial duties to Plaintiffs that the undisputed record confirms they simply did not have. Because of this, Defendant cannot meet its heavy burden of proof on its executive exemption defense.

\* \* \*

Defendant also claims the highly-compensated and/or combination exemption applies, but because Defendant cannot prove as a matter of law that Plaintiffs' primary duty of directional drilling and executing the well plan satisfies any of the primary duty requirements of the executive or administrative exemptions, it cannot satisfy the requirements of these exemptions either. 29 C.F.R. § 541.601; 29 C.F.R. § 541.708.

[ECF No. 58-1, pp. 1-2] (emphasis in original).

The Court first presents the relevant facts agreed to by the Parties before turning to their respective factual contentions and the Court's analysis.

## A.    Agreed Factual Background: Newsco's Business

Newsco is a drilling services company that provides directional drilling expertise and services to oil and gas companies. It operates as a third party on drill sites that are owned or operated by its clients. Part of its services to clients includes providing equipment and personnel to perform directional drilling.

Directional drilling is steering a well bore to drill a well, usually at some kind of non-perpendicular angle. In order to steer the drill toward oil underground, the directional drilling team follows a "well plan," which consists of the location of the target oil reservoir and plans to reach it by drilling. The process involves techniques called "rotating" and "sliding." "Rotating" is drilling while the drill pipe spins. "Sliding" is steering the direction of the drill bit and pipe. As one of the Plaintiffs described it, what the Directional Driller is "doing at the end is making sure that that bit is going . . . [in] the right direction to get you closer to where you need to be." [ECF No. 58-1, Ex. E, Joerger Dep. 112:8-23].

The process of directional drilling involves two primary types of employees which Newsco provides to its clients at the drilling site: Directional Drillers and Measurement While Drilling ("MWD") operators. Directional Drillers are the employees responsible for steering the drill underground toward the oil and making sure that it is following the well plan. [ECF No. 58-1, Ex. B, Newsco0000243, -286]. MWDs assemble, install, and monitor survey equipment used to generate data, such as well bore direction and angle, which, in turn, is provided to the Directional Drillers to aid them in steering underground. [*Id.* at -287]. Directional Drillers use the data provided by MWDs to compare the survey data to the client's well plan to determine where the drill is located underground and where it needs to go to reach the target. [*Id.* at -286].[2]

---

[2] The Parties dispute the hierarchy, if any, into which Directional Drillers and MWDs fall, as will be discussed in greater detail later. Briefly, Plaintiffs claim that although the positions work together on drilling sites, they fall within

## B.     Background of the Plaintiffs

As one might gather from the foregoing, the Plaintiffs and the Defendant agree on very little. They both agreed that Plaintiffs, during the time in question, made more than $100,000 annually (on a pro rata basis), and they both appear to agree that the job of a Directional Driller is not one that should be characterized as manual labor. The majority of the remaining case-controlling facts are disputed. In fact, one wonders how the daily work of directional drilling ever got done given the contrary views that the Parties hold about the duties of a Directional Driller.

### 1.     Larry Dore

Plaintiff Dore started working on a drilling rig the day after he graduated from high school in 1974. He worked his way up the drilling rig hierarchy until after five years, he was a drilling operator. In the following years, depending on the shape of the oil industry, he either worked on rigs or in unrelated industries. In 2009, after years of being a drilling operator, he applied with and was hired by Halliburton to be a Directional Driller. He went through its training program which included, among other things, months of "on the job" training.

Sometime later Dore was recruited by Newsco. He made $100,00 per year (at least on a pro rata basis) while working for Newsco.

### 2.     Bennett Joerger

Bennett Joerger went to the University of Oklahoma from which he graduated in 2010. After his formal education, he was hired by Weatherford as an MWD. He remained there until 2012 when he jumped both companies and job responsibilities to take a job at Archer Drilling

---

separate disciplines and management silos; that is, they report to different chains of command rather than one to the other. [ECF No. 58-1, at 6; *see also* ECF No. 58-1, Ex. F, Corp. Rep. Dep. 20:4-21; ECF No. 58-1, Ex. D, Heaton Dep. 11:9-14, 12:11-18; ECF No. 58-1, Ex. E, Joerger Dep. 145:9-12; ECF No. 58-1, Ex. G, Dore Dep. 32:14-16]. Plaintiffs also contend that "there is no formal requirement for MWDs to report to Directional Drillers." [ECF No. 58-1 at 6].

Services as a Directional Drilling trainee. As Halliburton did with Dore, Archer prepared Joerger through an in-house training program until he was deemed sufficiently proficient to work on his own. Unfortunately for Joerger, a few months after being trained, Archer went out of business.

Joerger then returned to Weatherford where after a brief training period he operated as a Directional Driller. Eventually, he was recruited to Newsco by some of his former co-workers. Being sufficiently trained by Archer and Weatherford, he jumped directly into the field as a Directional Driller at Newsco. He, too, made $100,000 per year on a pro rata basis.

### 3.    David Dean

Dean worked in the oil patch for a good part of his life. In 1999, he was a Pump Operator, and three years later he became a hydrostatic tester. He left the oil business for a year or so but returned soon thereafter as a floor hand. He then became an MWD at Scientific Drilling. Thereafter he jumped to Nevis Energy as a Directional Driller trainee. He described this period as almost entirely consisting of on-the-job training.

He worked as a Directional Driller for five more companies before landing at Newsco. Like Dore and Joerger, he made $100,000 (on a pro rata basis) annually at Newsco.

### C.    Contentions of the Parties

Simply put, Plaintiffs complain that they worked over 40 hours per week and were not paid overtime. That being the case, Plaintiffs claim Newsco violated the FLSA and is obligated to pay damages to remedy the situation.

Newsco contends that Plaintiffs were exempt employees and thus, it was not required to pay Plaintiffs overtime. It claims that all three Plaintiffs knew at the time they were hired that they would be making a salary ($4,000 per month) plus a day rate ($750 for Dean, $600 for Joerger and Dore) regardless of the number of hours they worked. As such, Newsco maintains that the

Plaintiffs were highly compensated and were therefore exempt from the overtime protections of the FLSA. Further, Defendant claims that all three Plaintiffs were covered by the administrative, executive, highly compensated, and/or combination exemptions as provided for by the FLSA. If an individual is exempt, his/her employer need not pay that employee overtime.

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once a movant submits a properly supported motion, the burden shifts to the nonmovant to show that the court should not grant the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–25 (1986). The nonmovant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

"When summary judgment is sought on an affirmative defense, as here, the movant 'must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor.'" *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016). The burden of proof regarding exempt status is on the employer. *Owsley v. San Antonio Indep. Sch. Dist.*, 187 F.3d 521, 523 (5th Cir. 1999). In a case involving

FLSA exemptions, those exemptions must be given a "'fair reading,' as opposed to the narrow interpretation previously espoused by [the Fifth Circuit] and other circuits." *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018) (quoting *Encino Motorcars, LLC v. Navarro*, -- U.S. --, 138 S.Ct. 1134, 1142 (2018); *see also Amaya v. NOYPI Movers, L.L.C.*, 741 F. App'x 203, 204-05 (5th Cir. 2018).[3]

In considering the evidence presented by the parties, the Fifth Circuit has made clear that "unsubstantiated assertions are not competent summary judgment evidence" and that "[s]ummary judgment . . . may be appropriate, even in cases where elusive concepts such as motive or intent are at issue, . . . if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993).

## III. Applicable Law

Under the FLSA, employers must pay their employees overtime wages if those employees work more than 40 hours a week. *See* 29 U.S.C. § 207(a) (requiring employers to compensate covered employees "at a rate not less than one and one-half times the [employee's] regular rate" for hours worked in excess of 40 hours per week). The overtime provisions do not apply, however, to employees exempted by Section 213. *See* 29 U.S.C. § 213 ("The provisions of section [] . . . 207 of this title shall not apply with respect to-- (1) any employee employed in a bona fide executive, administrative, or professional capacity . . . ."). To determine whether the Section 213 exemptions apply, courts quite frequently turn to the Department of Labor ("DOL") regulations interpreting

---

[3] The Parties have filed supplemental briefing regarding the significance of the *Encino* decision on the level of scrutiny to be applied by this Court in considering how to read the Secretary's list of exemptions. The Court finds that, as the Fifth Circuit has already adequately addressed the effects of *Encino*, it need not address the Parties' briefing in greater detail and instead will follow the binding precedent by providing a "fair reading" of the exemptions. *See Carley*, 890 F.3d at 579; *Amaya*, 741 F. App'x 204-05; *Encino*, 138 S.Ct. at 1142.

the FLSA for guidance. *Vela v. City of Houston*, 276 F.3d 659, 667 (5th Cir. 2001). "The [Department of Labor] is authorized to promulgate rules interpreting and clarifying the FLSA's administrative and professional exemption." *Clark v. Centene Co. of Tex., L.P.*, 656 F. App'x 688, 690 (5th Cir. 2016) (per curiam). The Fifth Circuit has repeatedly deferred to these administrative regulations in cases involving these overtime exemptions. *See Vela*, 276 F.3d at 667 ("This court must defer to these DOL regulations if (as all parties impliedly concede) they are 'based on a permissible construction of the statute.'") (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)).

In the instant case, Newsco has pleaded as affirmative defenses that it was not obligated to pay Plaintiffs overtime because they fell into the administrative, executive, highly compensated, and combination exemptions of the FLSA. In FLSA classification cases, the employer bears the burden of proving an overtime-pay exemption applies. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 402 (5th Cir. 2002). The Court therefore lays out the statutory and regulatory framework for each of these exemptions before addressing the Parties' contentions regarding what limitations period and damages calculation method should apply to the instant case.

*A. Administrative Exemption*

"For the administrative exemption to apply, the employee must be one (1) who is '[c]ompensated on a salary or fee basis at a rate of not less than $455 per week;' (2) '[w]hose primary duty is the performance of office or non-manual work directly related to the management and general business operations of the employer or the employer's customers;' and (3) '[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'" *Dewan*, 858 F.3d at 334 (quoting 29 C.F.R. § 541.200). The administrative exemption has been broadly fleshed out through examples in the regulations and caselaw.

The Fifth Circuit, in addressing when the administrative exemption applies, has described the test for an employee's "primary duty" as follows:

> Section 541.103 of the interpretations defines "primary duty" with respect to all three exemptions. It provides that, while "[i]n the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time[,] time alone . . . is not the sole test." Exempt work may be an employee's primary duty even though such work occupies less than half her time "if the other pertinent factors support such a conclusion." Precisely what those factors are depends on upon which exemption is being claimed, but for each the essence of the test is to determine the employee's chief or principal duty . . . [T]he employee's primary duty will usually be what she does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time.

*Dalheim v. KDFW-TV*, 918 F.3d 1220, 1227 (5th Cir. 1990) (internal citations omitted). If employees "are closely supervised and earn little more than the nonexempt employees, they generally do not satisfy the primary duty requirement." *Villegas v. Dependable Constr. Servs., Inc.*, No. 4:07-cv-2165, 2008 WL 5137321, at *6 (S.D. Tex. Dec. 8, 2008) (citing 29 C.F.R. § 541.700(c)). The Fifth Circuit has reiterated that the amount of time devoted to particular work duties is not the sole test and that a finding that the majority of an employee's time "was not spent [on exempt tasks] . . . did not preclude the determination that [his] primary duties consisted of the administration of the general business operations . . . such that the administrative and supervisory duty performed by [the employee] were of principal importance to [the employer], as opposed to those collateral tasks which may have taken more than fifty percent of [his] time." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 332 (5th Cir. 2000).

The Fifth Circuit has also clarified what "directly related" means:

> The Secretary's interpretation, § 541.205(a), defines the "directly related" prong by distinguishing between what it calls "the administrative operations of a business" and "production." Administrative operations include such duties as "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." Work may also be "directly related" if it is of "substantial importance" to the business operations of the

enterprise in that it involves "major assignments in conducting the operations of the business, or . . . affects business operations to a substantial degree."

*Dalheim*, 918 F.3d at 1230 (internal citations omitted). The term "substantial importance," however, is not meant to signify that a worker's performance may cause significant profits or losses. *Id.* at 1231 ("'An employee's job can even be indispensable and still not be of the necessary substantial importance to meet the directly related element.' In assessing whether an employee's work is of substantial importance, it is necessary yet again to look to 'the *nature* of the work, not its ultimate consequence.'") (citing *Clark v. J.M. Benson Co.*, 789 F.2d 282, 287 (4th Cir. 1986)).

The Secretary has explained through the regulations that differentiating between administrative operations and production is a key inquiry in determining whether an employee's work is "directly related to the management and general business operations of the employer or the employer's customers." 29 C.F.R. §§ 541.201(a), (b). "[W]here an employee is primarily involved in producing the product of the company rather than 'servicing' the company, the administrative exemption does not apply." *Villegas*, 2008 WL 5137321, at *7. "Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as . . . accounting; budgeting; auditing; . . . quality control; purchasing; procurement; . . . safety and health; personnel management; human resources; . . . government relations . . . legal and regulatory compliance; and similar activities." 29 C.F.R. § 541.201(b).

Regarding the next factor, the exercise of discretion and independent judgment, the Fifth Circuit has stated that the administrative exemption "also requires that an employee exercise discretion and independent judgment with respect to matters of significance, which 'involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.'" *Zannikos v. Oil Inspections (USA), Inc.*, 605 F. App'x 349, 354 (5th Cir. 2015) (quoting 29 C.F.R. § 541.202(a)). Although an employee does

not need to exercise *final* decision-making authority to meet this standard, exercising discretion requires "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. §§ 541.202(c), (e); *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 585 (5th Cir. 2006) (holding that an employee may exercise discretion even if his or her decisions or recommendations are reviewed by senior management and occasionally revised or reversed). Employees may still exercise discretion and independent judgment if they consult manuals or guidelines to perform their work. *Cheatham*, 465 F.3d at 585. The Secretary has laid out a list of ten non-exhaustive factors that courts often consider when making the determination whether an employee exercises the requisite discretion:

> Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b) (emphasis added).

In an FLSA case also involving a similar type of employee (mud engineer) on oil drilling sites, the Fifth Circuit reversed the district court's grant of summary judgment for the employer, despite the fact that summary judgment evidence established that the employees worked closely with company men, continually monitored the quality of drilling fluids and muds, allegedly oversaw other company employees on the drilling site, and allegedly used discretion and

independent judgment to implement the drilling plan. *See Dewan*, 858 F.3d at 337. It found that fact issues existed as to the administrative exemption with regard to whether the mud engineers' "work could be classified as office or non-manual work directly related to the general business operations of [the employer's] customers," as Plaintiffs had presented enough evidence for a jury to find that some of their work might involve manual labor and production, rather than servicing the business operations. *Id.* at 337-38. The Court further found that Plaintiffs' lack of involvement in developing the well plan and their option of deviating from the well plan as needed to meet changing drilling conditions raised a fact issue as to whether they exercised discretion and independent judgment in the course of their work. *Id.* at 338-40. Although the facts differ slightly between that case and the instant one, both involve the same underlying questions regarding the primary duties of the employees and whether the employees exercised independent judgment and discretion in those roles.

With these considerations in mind, the Court turns to the legal question: whether the Plaintiffs fall within the FLSA's administrative exemption. In this case, the determination requires consideration of whether Plaintiffs' primary duty was "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers" *and* whether their primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance."[4] *See* 29 C.F.R. § 541.200(a). As stated above, in a similar dispute regarding mud engineers employed by a drilling company, the Fifth Circuit observed that this "'ultimate determination, however, relies on many factual determinations that can be resolved by a jury.'" *Dewan*, 858 F.3d at 334 (quoting *Singer v. City of*

---

[4] Plaintiffs concede that they each meet the salary requirement for the administrative exemption, as the undisputed summary judgment evidence shows that each Plaintiff earned a base salary of no less than $455 per week. Since there is no dispute regarding the first prong of the exemption, the Court does not address it further.

*Waco, Tex.*, 324 F.3d 813, 818 (5th Cir. 2003)). Part of the consideration involves the amount of time that the Plaintiffs devoted to particular duties, as well as the significance of those duties. *Id.* (citing *Zannikos*, 605 F. App'x at 352). While there are some shared facts provided by the Parties, the inferences that the Parties argue that the Court should draw from them vary widely with regard to Plaintiffs' supervision of other employees and exercise of judgment or discretion in directional drilling and implementing the well plan. "[T]he drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255.

The Court declines to draw those inferences without the involvement of a jury. *See Dewan*, 858 F.3d at 335 ("[F]actual issues such as identifying these employees' primary duties, or deciding if they exercised independent judgment and discretion, cannot be resolved without making inferences from the evidence that are subject to genuine dispute. Those interpretations cannot be said on this record to be resolvable on summary judgment."). Accordingly, the Court will not grant summary judgment for either Party with regard to the administrative exemption. The Court concludes that it is necessary to examine the two contested criteria separately and examines each to show the extent of the fact-finding needed before a jury.

       1.       Work "Directly Related" to "Management or General Business Operations"

As previously explained, the regulations define an employee's "primary duty" as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "The 'directly related' test is met by the employee's 'assisting with the running or servicing of the business, as distinguished, for example from working on a manufacturing production line or selling a product in retail or service establishment.' § 541.201(a). Under that

inquiry, it is 'the type of work performed by the employee' on which we must focus. *Id.*" *Dewan*, 858 F.3d at 335.

Like the plaintiffs in *Dewan*, Plaintiffs argue and provide summary judgment evidence to the effect that the type of work they performed was fundamentally different from the examples laid out in the regulations, where the examples of work "directly related to management or general business operations" include human resources, marketing, quality control, safety and health, etc. 29 C.F.R. § 541.201(b). In another section, the regulation entitled "Administrative exemption examples" includes insurance-claim adjusters, financial-services employees, and human-resource managers. 29 C.F.R. § 541.203.

In particular, similar to the arguments made in *Dewan*, Plaintiffs concede that their work involves producing income-generating services that are central to Newsco's business model, but Plaintiffs argue that they are more analogous to oil-well drillers, which are included in a Labor Department list of "Blue Collar Occupations That Are Most Likely Nonexempt." *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,242 (Apr. 23, 2004) (as codified at 29 C.F.R. pt. 541).

This query highlights the need for clarity between work which has as its primary duty the provision or production of a commodity, whether goods or services, to the marketplace and work which has as its primary duty the administering of business affairs of the employer's enterprise. *See Dalheim*, 918 F.2d at 1230. In reviewing this issue, the Fifth Circuit has noted that this line is sometimes blurred in modern workforces, "particularly given that the item being produced . . . is often an intangible service rather than a material good." *Dewan*, 858 F.3d at 336 (quoting *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 532 (2d Cir. 2009)). Here, the general business operations

of Newsco were supplying directional drilling to the oil industry. It is clear that directional drilling is an essential part of Newsco's business and the primary duty of the Directional Drillers. Nevertheless, the distinction between "administering the business affairs of the enterprise" and "producing the commodity" of the business must remain at the forefront of the Court's analysis. *Dalheim*, 918 F.2d at 1230.

### 2.    Disputed Facts

Plaintiffs have argued vehemently that they are not management or administrative employees. Following the examples set out by C.F.R. § 254.205(a), they claim that they do not:

    (1) Advise management,
    (2) Plan and/or negotiate,
    (3) Represent the company,
    (4) Make purchases (other than on site incidental items such as food and small
        office supplies),
    (5) Promote sales, or
    (6) Conduct business research and control.

Finally, they maintain that their jobs are not anything close to the examples of "insurance-claim adjusters, financial-service employees, and human resources managers." *See* 29 C.F.R. § 541.203.

Newsco's briefing (and summary judgment evidence), in certain ways, contradicts that supplied by Plaintiffs. It stresses that its main business is directional drilling and that the Directional Drillers are the ones actually performing that task. It emphasizes that the Directional Drillers are actually Newsco's representatives on the site. Moreover, while each side disputes the actual involvement of the "company man," the undisputed evidence shows that a Directional Driller's work at a wellsite requires frequent contact with the company men during an assignment. Newsco maintains that regardless of the company man's authority, it is the Directional Drillers that are on site exercising judgment, making critical decisions, and are, at the very least, a professional consultant to the company's personnel. Plaintiffs, of course, contest this portrayal,

claim they exercise little discretion, and maintain that they do exactly what the company man tells them to do because it is his employer's well.

The Court could detail each factor and each factual dispute *ad infinitum*, and there would still be no way to resolve the Parties' conflict. Interestingly, in many instances, the Parties agree as to the basic facts, but differ on the conclusions to be drawn from those facts. The bottom line is the Fifth Circuit has held in *Dewan* that the job of drawing conclusions and resolving competing nuances is not to be done by the Court and instead must be reserved for the jury.

*B. Executive Exemption*

According to Defendant, Plaintiffs qualify as executives and thus would be exempt under the FLSA if their job includes the criteria set out below:

- directs the work of employees;
- maintains production or sales records for use in supervision or control;
- appraises employees' productivity and efficiency for the purpose of recommending promotions or other changes in status;
- handles employee complaints and grievances;
- plans the work; determines the techniques to be used; apportions the work among the employees; determines the type of materials, supplies, machinery, equipment or tools to be used [;] . . . provides for the safety and security of the employees or the property. . . .

As stated above, both sides "agree" that the Plaintiffs' primary duty was to guide the directional drilling process toward the goal set out by their client. Newsco paints this as a management position and position of trust based upon the training and experience of each driller. Plaintiffs, not surprisingly, paint the opposite picture and claim they possess no managerial authority. Among the points of contradiction are:

(1) Plaintiffs claim they do not supervise anyone; Defendant claims they supervise at least two MWDs at all times.

(2) Plaintiffs claim they do not have any hiring or firing authority, while Defendant claims it routinely gave any recommendations made by the Directional Drillers "particular weight."

The FLSA provides that an employee is exempt from over-time provisions under the executive exemption if he/she (1) "[i]s compensated on a salary basis at a rate of not less than $455 per week"; (2) "[p]erforms a primary duty that consists of management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof"; (3) "[c]ustomarily and regularly directs the work of two or more other employees"; and (4) "[h]as the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a).

To meet the standard for this exemption, the "primary duty" prong is defined by the employee's "management of the enterprise." That an employee often performs non-management tasks does not necessarily preclude a finding of exempt status. *See Gellhaus v. Wal-Mart Stores, Inc.*, 769 F. Supp. 2d 1071, 1080 (E.D. Tex. Mar. 10, 2011) (finding that although the record did not disclose how much of her time was spent on managerial tasks, the record strongly suggested that more than half of her time was devoted to clearly managerial tasks in order to satisfy the executive exemption) (citing *Rainey v. McWane, Inc.*, 552 F. Supp. 2d 626, 630 (E.D. Tex. 2008) "('[E]vidence that some [p]laintiffs spent time performing manual labor does not raise a genuine issue of material fact as to whether [p]laintiffs primary duty was management.'); *Mims[ v. Starbucks Corp.*, No. H-05-0791, 2007 WL 10369,] at *8 [(S.D. Tex. Jan. 2, 2007)] (finding plaintiffs exempt despite the fact that they spent less than fifty percent of their time on management tasks); *Kastor v. Sam's Wholesale Club*, 131 F. Supp. 2d 862, 866-67 (N.D. Tex. 2001) (granting summary judgment in favor of employer where the purpose of plaintiff's employment was managerial even though he spent ninety percent of his time on non-exempt tasks).").

Some courts in this circuit have added additional factors to consider where non-managerial tasks comprise less than fifty percent of the employee's work duties to determine whether his/her primary duty is management: "(1) the relative importance of managerial duties compared to other duties; (2) the frequency with which the employee makes discretionary decisions; (3) the employee's relative freedom from supervision; and (4) the relationship between the employee's salary and the wages paid to employees who perform relevant non-exempt work." *Gellhaus*, 769 F. Supp. 2d at 1081; *Mims*, 2007 WL 10369, at *4 (citing 29 C.F.R. § 541.700(a)).

The regulations provide examples of what type of tasks "management of the enterprise" might entail, such as

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

The regulations also state that an employee can meet this second prong through the management of "a customarily recognized department or subdivision thereof." *See id.* § 541.100(a). The regulation distinguishes between a "collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. A customarily recognized department or subdivision must have a permanent status and a continuing function." *Id.* § 541.103. The regulation provides, as an example, that "a large employer's human resources department might have subdivisions for labor relations, pensions and other benefits,

equal employment opportunity, and personnel management, each of which has a permanent status and function." *Id.* A recognized department or subdivision may move from place to place and the subordinate personnel may change, as long as the unit has a continuing function. *Id.* § 541.103(d) ("Continuity of the same subordinate personnel is not essential to the existence of a recognized unit with a continuing function."); *Allen v. Coil Tubing Servs. LLC*, 846 F. Supp. 2d 678, 708 (S.D. Tex. 2012) ("A recognized department or subdivision may move from place to place and the subordinate personnel may change, as long as the 'unit' has a continuing function.").

Additionally, executive employees make suggestions and recommendations regarding employees whom the executive "customarily and regularly directs." 29 C.F.R. § 541.105. Customarily and regularly includes "work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." *Id.* § 541.701. This prong requires showing that the employee "customarily and regularly directs the work of" at least two other employees. *Id.* § 541.100(a); *Chambers v. Sodexo, Inc.*, 510 F. App'x 336, 339 (5th Cir. 2013); *Carranza v. Red River Oilfield Servs., LLC*, No. H-15-3631, 2017 WL 387196, at *4 (S.D. Tex. Jan. 25, 2017).

Finally, the last prong requires that exempt executive employees have authority to hire or fire other employees or that his/her recommendations be given particular weight.

> To determine whether an employee's suggestions and recommendations are given "particular weight," factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105. An employee's suggestions or recommendations may still have "particular weight" even if a higher manager's recommendation has more importance and even if the employee does not make the ultimate determination. *See id.* Courts in this circuit have noted that "[i]f final decision-making authority were the test for determining whether a person was an executive or administrative employee, one would rarely, if ever, qualify as such an employee under the regulations." *Kastor*, 131 F. Supp. 2d at 867. "Indeed, there is often a hierarchy in any organization wherein supervisors have persons to whom they report, and the fact that an individual does not have final supervisory authority does not take that person out of the realm of being a manager in the organization." *Gellhaus*, 769 F. Supp. 2d at 1082; *see also Kastor*, 131 F. Supp. 2d at 868.

A sharp factual dispute exists with regard to the executive exemption. Again, both sides agree on the compensation level of $455 per week for each plaintiff and, while the Plaintiffs have conceded that they did not perform manual labor, they contest whether they performed any tasks related to the management and general business operations of Newsco. They also contest that their duties involved the exercise of discretion and independent judgment on any significant issues.

Plaintiffs have produced evidence that supports their position that they do not perform any activities outlined in 29 C.F.R. § 541.102. For example, they claim they have not:

(1) Interviewed or selected an employee;
(2) Trained an employee;
(3) Set or adjusted pay or hours;
(4) Directed other employees;
(5) Maintained production and sales records for supervisory use;
(6) Appraised employees for promotion;
(7) Handled grievances;
(8) Disciplined employees;
(9) Planned the work;
(10) Determined the techniques to use;
(11) Apportioned the work among employees;
(12) Determined the type of materials to use or buy;

| (13) | Controlled the flow of materials; |
| (14) | Handled the safety and security of employees or property; |
| (15) | Planned or controlled the budget; or |
| (16) | Monitored or insured legal compliance. |

Moreover, they maintain their primary duty of directing the drill to the designated target is totally non-managerial and involves little or no discretion.

Newsco's argument emphasizes that the Directional Drillers were its representatives on the drill sites and that they were the individuals making the key critical decisions. Newsco contends that Directional Drillers supervise the team of MWDs assigned to the well site and could (and occasionally did) make hiring and firing recommendations. Moreover, while each side paints a different picture of the role of the "company man," Newsco maintains that regardless of how one views his/her role on the drill site, the Directional Drillers are certainly the face of the company acting as consultants (using their training, experience, and judgment) to the company man. Conversely, Plaintiffs claim they merely do what the company man tells them to do.

This Court could conduct a detailed analysis of the factors and the underlying factual dispute and describe each conclusion that could be drawn from the facts, but such an analysis in this situation would be superfluous. Based upon the controlling Fifth Circuit precedent and the summary judgment evidence, the ultimate conclusion is that the interpretation of these facts must be made by a jury.

C.    *Highly Compensated Employee Exemption*

Without belaboring the points in consideration, the Court—especially since it is constricted by the dictates of *Dewan*—will briefly discuss the relevant contentions.

"The FLSA provides that '[a]n employee with total annual compensation of at least $100,000 is deemed exempt . . . if the employee customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional

employee . . . .'" *Zannikos*, 605 F. App'x at 359 (quoting 29 C.F.R. § 541.601(a)). To qualify for this exemption, the employee's primary duties must include performing office or non-manual work. 29 C.F.R. § 541.601(d). The employee need not meet all of the requirements of executive, administrative, or professional employees to qualify for this exemption. *See id.* § 541.601(c). "A high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties." *Id.* The $100,000 threshold can include commissions and bonuses. *See* 29 C.F.R. § 541.601(b)(1). The monetary threshold is satisfied for a year in which the employee works less than the full year if he/she is paid a pro rata portion of the $100,000 based on the period of time he/she worked. *See* 29 C.F.R. § 641.601(b)(3). Thus, if an employee who earns at least $100,000 annually also performs office or non-manual work related to an employer's business or that of its customers, the employee qualifies for the highly compensated exemption and is not entitled to overtime pay.

Defendant claims that the Plaintiffs fall under the highly compensated employee exemption. Setting aside the first element, the $100,000 annual pro rata pay requirement, which all parties concede has been met, the Defendant argues that Plaintiffs do not perform manual labor (a point also conceded by Plaintiffs in their briefing)[5] and the Plaintiffs regularly and customarily performed at least one of the duties of an executive, administrative or professional employee. It is this final factor over which the battle lines are drawn. Newsco claims the Plaintiffs meet all of the executive requirements while Plaintiffs argue they meet none.

Newsco claims and has brought forth evidence that Plaintiffs:

(1)     Direct the work of other employees;
(2)     Maintain production or sales records for use in supervision or control;
(3)     Appraise employees' productivity/efficiency for the purpose of recommending promotions or other change in status;

---

[5] In their briefing, Plaintiffs stated, "While this work does not involve manual labor, it similarly is not directly related to management or the general business operations of Newsco." (Doc. No. 58-1 at 19).

(4)   Handle employee complaints and grievances; and

(5)   Plan the work, determine the techniques to be used, determine the types of materials, supplies, machinery, equipment or tools to be used and provide for the safety and security of the employees or the property.

As detailed above, Plaintiffs have contested each of these factors such that the application of this exemption, too, will need to be resolved by the jury.

The highly compensated employee exemption has its own exception for "blue-collar" workers, as the exemption applies

only to employees whose primary duty includes performing office or non-manual work. Thus, for example, non-management production-line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, laborers and other employees who perform work involving repetitive operations with their hands, physical skill and energy are not exempt under this section no matter how highly paid they might be.

29 C.F.R. § 541.601(d). Given the factual disputes and controlling precedent, this Court cannot, as a matter of law, rule that either the highly compensated employee exemption or blue-collar exception to that exception applies.

As the Court has already explained in detail in the preceding sections the issues of material fact regarding the Plaintiffs' primary duties for purposes of the administrative and executive exemptions, it will not repeat that analysis here. The Court cannot reach a conclusion as a matter of law on this exemption as long as issues of material fact remain. Consequently, the Court also denies summary judgment with regard to both the Defendant's claim as to the application of the highly compensated exemption and the Plaintiffs' claim as to the applicability of the blue-collar exemption.

D.    *Combination Exemption*

Newsco has also pleaded that Plaintiffs were exempt from overtime pay under the combination exemption. That exemption provides that "[e]mployees who perform a combination

of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section." 29 C.F.R. § 541.708. If it is not clear that the employees performed exempt work, under either the administrative or executive categories, as their primary duty, then the combination exemption cannot apply. *See Dalheim*, 918 F.2d at 1232. Given the overriding factual disputes that can only be resolved by trial, this Court need not belabor the fact that it cannot decide this matter at the summary judgment stage.

E.     *Remaining Claims: FLSA's Two-Year Statute of Limitations for Non-Willful Violations and Fluctuating Work Week Method*

"FLSA claims are subject to a two-year statute of limitations for ordinary violations and a three-year period for willful violations." *Zannikos*, 605 F. App'x at 360 (citing 29 U.S.C. § 255(a)); *see also Singer*, 324 F.3d at 821. The plaintiff bears the burden of demonstrating willfulness. *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990). Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable. *Id.* (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127-28 (1985); *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990)). The Supreme Court has explained an employer's FLSA violation is only willful if it "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute . . . ." *McLaughlin*, 486 U.S. at 133. The Fifth Circuit has further described the importance of this precedent as follows:

> An employer who "act[s] without a reasonable basis for believing that it was complying with the [FLSA]" is merely negligent. [*McLaughlin*, 486 U.S.] at 134-35, 108 S.Ct. 1677. So too is an employer who fails to seek legal advice regarding

its payment practices. *See id.*; *Mireles*, 899 F.2d at 1416. Willfulness has been found when the evidence demonstrated that an employer actually knew that its pay structure violated the FLSA or ignored complaints that were brought to its attention. *See Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 553 n.24 (5th Cir. 2009).

*Zannikos*, 605 F. App'x at 360. Thus, an employer "is not acting willfully even if he fails to seek legal advice on his payment method or acted unreasonably in violating FLSA." *Villegas*, 2008 WL 5137321, at *26 (citing *Mireles*, 899 F.2d at 1416). Newsco contends it acted in good faith and never willfully violated the FLSA. Conversely, Plaintiffs affirmatively seek a judgment that Newsco did not act in good faith and willfully violated the FLSA.

Defendant also seeks summary judgment as to whether the fluctuating work week method, which might eliminate or reduce the amount of damages, should control. Plaintiffs clearly oppose its application.

Based upon the disputed facts above, this Court has already determined that the primary issues must be determined by a jury. These ancillary issues, while important, are so intertwined with the resolution of the major issues, and so factually intensive, that the Court finds it inappropriate to attempt to carve out and resolve these issues on an incomplete record.

Therefore, this Court denies both the Defendant's and Plaintiffs' motions for summary judgment on these issues. Regardless of how many exemptions, legal issues, factual controversies, or arguments one reviews in this case, there is either a dispute as to the controlling facts or, if the parties agree on the facts, a dispute over what conclusions can be drawn from the agreed upon facts. Unfortunately, such a stalemate spells doom for both summary judgment motions, especially where one considers the controlling Fifth Circuit precedent.

## IV. Conclusion

Since *Dewan*, this Court has reviewed a number of similar disputes involving the application of these FLSA exemptions to jobs within the oil drilling/consulting industry. The resolution in each instance has been highly fact specific. Since both the facts and the inferences one draws from the facts are heavily disputed, the Court declines to grant summary judgment for either party.

Having considered the Parties' briefing, exhibits, and responses thereto, the Court hereby **ORDERS** that Defendant's Motion for Summary Judgment (Doc. No. 48) and Plaintiffs' Motion for Summary Judgment (Doc. No. 58) are both hereby **DENIED**.

Signed at Houston, Texas, this __6__ day of August, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE